UNITED STATES of America,
Plaintiff–Appellee,

v.

James ROGERS, Defendant–Appellant.

No. 00–5535.

United States Court of Appeals,
Sixth Circuit.

June 6, 2001.

**304**

Before KENNEDY and
SUHRHEINRICH, Circuit Judges;
GADOLA, District Judge.*

PER CURIAM.

Before the Court is James Rogers's appeal of the U.S. District Court for the Eastern District of Tennessee's order revoking his conditional release. For reasons set forth below, we AFFIRM the district court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant suffers from a bipolar mental ailment that he can control only by taking lithium. Appellant has a long history of committing arson and other criminal acts of violence. On August 2, 1992, notably, Appellant walked through a laundromat with a sawed-off shotgun, went outside, and discharged the weapon into the air. After his ensuing indictment for violating 18 U.S.C. § 922(g) (felon in possession of a firearm). Appellant pled not guilty by reason of insanity pursuant to a plea agreement. The district court accepted the plea and, pursuant to 18 U.S.C. § 4243, remanded Appellant into the custody of the Bureau of Prisons ("BOP") for treatment.

* The Honorable Paul V. Gadola, U.S. District Court for the Eastern District of Michigan, sitting by designation.

In October, 1994, however, the district court ordered Appellant conditionally released. In 1998, Appellant violated the terms of his release by not taking the proper medications and by threatening his probation officer. The district court again remanded Appellant to the BOP's custody for treatment.

In September, 1999, the district court yet again ordered Appellant conditionally released. Pursuant to the district court's release order, Appellant was obliged to, *inter alia*, take his prescribed medication and refrain from excessive usage of alcohol. Regrettably, this period of release was destined to be short lived.

On April 18, 2000, after concluding that Appellant violated the conditions of his release by failing to take his medication and by excessively using alcohol, the district court once again revoked Appellant's conditional release and ordered him remanded to the BOP's custody pursuant to § 4243(g). The district court also noted that Appellant had "thoroughly trashed the apartment where he was living, and made threats to at least two different persons, including his landlord. He has poured gasoline throughout his apartment, and it is fortunate indeed that he did not set it afire." The court below further observed that "there does not appear to be any local facility that is equipped to supervise [Appellant] as closely as he needs to be supervised."

Appellant remains in custody and now appeals the district court's order on the ground that it erred in revoking his "conditional release even though there was such a lack of evidence to support the conclusion that [Appellant] failed to comply with his treatment regimen and, as a result, he created a present substantial risk to others or their property."

## II. LEGAL STANDARD

As the parties note, they have found no binding authority as to the standard of review that this Court must apply to a district court's revocation of conditional release pursuant to § 4243(g). The standard of review appropriate for such cases appears to be an issue of first impression in this jurisdiction.

 Section 4243(g), in pertinent part, requires that a district court "shall, after a hearing, determine whether the person *should* be remanded to a suitable facility on the ground that, in light of his failure to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment, his continued release would create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S .C. § 4243(g) (2000) (emphasis added). The word "should," in most contexts, is precatory, not mandatory. *See, e.g., Hamlet v. United States,* 63 F.3d 1097, 1104 (Fed.Cir.1995); *Marshall v. Anaconda Co.,* 596 F.2d 370, 375–77 (9th Cir.1979); *United States v. Williamson,* 4 M.J. 708, 713 (N.C.M.R.1977) (Dunbar, J., concurring); *United States v. Nichols,* 661 F.Supp. 507, 509 (W.D.Mich.1987) (reasoning that "should" was precatory in 18 U.S .C. § 4241(b)). In this particular situation, Congress's use of the mandatory "shall" eight words before "should" further indicates that Congress apprehended a distinction between the two terms and evinced its intent to make a district court's ability to revoke conditional release under § 4243(g) hortatory. *Cf. Jackson v. United States,* 129 F.Supp.2d 1053, 1058 (E.D.Mich.2000) (Gadola, J.) (citing *Bates v. United States,* 522 U.S. 23, 29–30, 118 S.Ct. 285, 139 L.Ed.2d 215 (1997)); 21 Am.Jur.2d *Criminal Law* § 91 (2000) (using the precatory "may" in relation to a district court's decision to revoke conditional release). The ability of a district court to revoke a person's conditional release under § 4243(g) therefore arises out of advisory language.

 The existence of such precatory language in the statute implies that the district court's power to revoke conditional release is discretionary, not a mandatory requirement. *See Kelly v. United States,* 924 F.2d 355, 360 (1st Cir.1991) (reasoning that precatory terms in a regulation were characteristic of a discretionary function); *McLaughlin v. Board of Educ.,* No. 1:00–CV–69, 2001 WL 300317, at *13 (W.D.Mich. Mar. 12, 2001) (McKeague, J.) (reasoning that a precatory standard implies discretion in the decision maker). Where, as here, a district court has exercised a discretionary function, we must review the decision below for an abuse of discretion. *See, e.g., Huguely v. General Motors Corp.,* 999 F.2d 142, 145 & n. 2 (6th Cir.1993). We will find an abuse of discretion only if we have "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Union Oil Co. of Cal. v. Service Oil Co., Inc.,* 766 F.2d 224, 227 (6th Cir. 1985) (internal quotation omitted).

## III. DISCUSSION

 The relevant factors that the district court weighed in this case were Appellant's noncompliance with the terms of his conditional release, and the danger to the community that flowed from such noncompliance. Having concluded that Appellant violated the conditions of his release by failing to take his medication and by excessively consuming alcohol, and that such violations led to Appellant's bizarre and threatening behavior, the court below ordered revocation of Appellant's supervised release.

Appellant first argues that, when the district court reached its conclusions on April 18, 2000, there was a lack of suffi-

cient evidence to conclude that Appellant had failed to comply with his treatment regimen. The district court, however, had evidence that Appellant had, indeed, failed to take his lithium. Most significant was the testimony of Appellant's neighbor, Mr. Marshall Wilson.

Mr. Wilson stated that Appellant had told him that the medication was "giving him some kind of reaction," thus implying that Appellant had a motive to stop taking his lithium. Mr. Wilson further stated that he had cleaned Appellant's apartment after Appellant had vacated the premises in early April, 2000, and that he observed "medicine all over the floor." Mr. Wilson also testified that, although Appellant had initially been "acting normal," Appellant had engaged in a downward spiral of bizarre, threatening, and dangerous behavior in the weeks leading to the district court's revocation of Appellant's conditional release. Where, as here, courts have had competent evidence that a person was failing to adhere to his medical regimen and engaging in threatening activity, such courts have commonly exercised their discretion to revoke that person's conditional release. See, e.g., United States v. Evans, 12 F.Supp.2d 461, 462–63 (E.D.Pa.1998); United States v. Johnson, 824 F.Supp. 198, 199–200 (M.D.Ala.1993).

██ Appellant argues that Appellee's case was nonetheless flawed because the Government "did not present any evidence that [Appellant's] destabilization resulted from his failure to take his medication" and that no Government witness was "in a position to actually determine" whether Appellant had taken his medicine. It seems reasonable, however, to infer from Appellant's odd behavior and the discovery of "medicine all over [Appellant's] floor" that Appellant failed to take his lithium.

Appellant correctly observes that no Government witness said from direct knowledge that Appellant had ceased taking his medication. Nothing within § 4342(g), however, requires that a witness have direct knowledge of a person's noncompliance. Instead, where the criminal code is silent as to the type of evidence that is required to support a conclusion, to rely upon circumstantial evidence is permissible. See United States v. Carter, 311 F.2d 934, 940 (6th Cir.1963).

Appellant also points out that the district court had evidence before it tending to show that Appellant could have engaged in the conduct described above even if he had been taking his medication. That evidence consisted mainly of the testimony of Appellant's expert witness, Dr. David A. Solovey. Dr. Solovey testified that Appellant's behavior may have resulted from experiencing great stress, and not from discontinuing his medication. There also was evidence that Appellant was, indeed, suffering great stress when he engaged in the conduct delineated above, and that he had taken his medication at least until two weeks before that conduct. Appellant himself had testified that he was taking his lithium as prescribed during the period in question.

Except for Appellant's own testimony, Appellant's evidence was, like the Government's, circumstantial; i.e., Appellant can point to no other direct evidence that shows he was actually taking his lithium in April, 2000. Faced with two competing theories, both based mainly on indirect evidence, that would explain Appellant's disturbing conduct, the court below found as a matter of fact that Appellant acted as he did because he had failed to take his prescribed medicine and consumed too much alcohol.[1] In these circumstances, we

---

1. Appellant never addressed the significance of the court below's conclusion that he exces-

sively consumed alcohol.

will not hold that this conclusion was unfounded, and that the decision to remand Appellant to the BOP's custody that flowed from it was a clear error of judgment. *Cf. United States v. Duncan,* 918 F.2d 647, 652 (6th Cir.1990) (reasoning that it was the "prerogative of a finder of fact to choose whom it will believe").

Appellant next argues that, as of the hearing date, there was insufficient evidence to establish that Appellant's "continued release would create a substantial risk of bodily injury to another person or serious damage to the property of another." Appellant mainly relies on Dr. Solovey's testimony to the effect that, as of April 13, 2000, Appellant was "fairly well compensated." Appellant reasons that: (a) this evidence showed that Appellant was not dangerous as of the hearing date, which was April 18; (b) § 4243 establishes commitment procedures only for those who are presently dangerous; and (c) it was therefore an error for the court below to conclude that Appellant posed a present danger to society as of April 18, 2000.

The chief flaw in Appellant's argument is that Appellant was in custody at the Hamilton County Justice Center when Dr. Solovey interviewed him on April 13, 2000. The question the court below had to answer, however, was not whether Appellant would take his medication and behave safely while under lock and key. Rather, the district court had to decide whether, given his historical failure to comply with his medical regimen, Appellant's "continued release" into society would pose a danger. 18 U.S.C. § 4243(g). Given the evidence before the district court, there was ample reason to believe that, as of April 18, 2000, the answer to that question was "yes." We thus conclude that the court below did not abuse its discretion when it ordered Appellant's conditional release to be revoked.

## IV. CONCLUSION

For the reasons set forth above, we AFFIRM the district court's order.